IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HERBERT SETH GOODLIN,**<br>*Plaintiff,*<br><br>v.<br><br>**ALEX ROSE et al,**<br>*Defendants.* | Civil No. 23-2304 |

**MEMORANDUM**

COSTELLO, J.                                                               August 21, 2025

      Plaintiff Herbert Seth Goodlin sued the Borough of Folcroft ("Folcroft") and Detective Daniel White under 42 U.S.C. § 1983 and various state laws, claiming that he was falsely arrested by Detective White. The arrest arose from a home improvement dispute. A pair of Folcroft residents hired Goodlin for a home improvement project that Goodlin failed to complete. The residents paid Goodlin for the project, but after doing some demolition, Goodlin absconded with their money and left them with a mess. The residents contacted Folcroft police, which assigned Detective White to investigate. After his investigation, Detective White obtained a warrant for Goodlin's arrest for theft and fraud. The charges against Goodlin were ultimately dismissed at the preliminary hearing phase. Goodlin then brought this suit alleging, among other things, that he was maliciously prosecuted and falsely imprisoned. Detective White and Folcroft have moved for summary judgment. For the reasons that follow, the Court will grant the Defendants' motion.

I.   **BACKGROUND**

   A.   **Facts**

Dianetta Jones and Forkpa Subah, Folcroft residents, hired Goodlin to work on their home. ECF No. 62 ¶ 1. On February 29, 2022, they paid Goodlin $2,000. *Id.* ¶ 2. On March 9, 2022, they paid him an additional $3,000. *Id.* While Goodlin performed some demolition at the home, Goodlin stopped coming to the property and stopped answering and returning phone calls after the March 9, 2022, payment. *Id.*; ECF 62-1 at 10 (Transcript of Detective White's December 12, 2024 Deposition). Not only did Goodlin fail to complete the project, but he left trash and debris at the property, causing Jones and Subah to receive a citation from Folcroft for a code violation. ECF No. 62 ¶ 9.

Jones and Subah contacted the Folcroft Police Department. Detective White, who had previously investigated about a dozen contractor fraud cases, was assigned to the case. *Id.* ¶ 7. Among other things, Detective White gathered receipts from Subah, took written statements, and reviewed photographs. *Id.* ¶¶ 8-9. In addition, Detective White tried contacting Goodlin multiple times but received no response. *Id.* ¶ 3. During the investigation, Detective White learned that Goodlin was working in Folcroft without a permit. *Id.* ¶ 10.

Based on his investigation, Detective White attested to an affidavit of probable cause and sought a warrant for Goodlin's arrest for theft by deception and home improvement fraud. *Id.* ¶¶ 4-5. An Assistant District Attorney for Delaware County reviewed and approved Detective White's affidavit and warrant application. *Id.* ¶ 6. Detective White then submitted the affidavit and application to a magistrate judge. *Id.* The magistrate judge approved the charges and authorized Goodlin's arrest. *Id.* ¶ 4.

B.  **Procedural History**

The warrant was not executed for nearly a year—until March 8, 2023—when Goodlin was arrested in another township on unrelated charges. *Id.* ¶ 11. Goodlin gave a fake name to the arresting officers because he knew about the outstanding warrant in Folcroft. *Id.* Goodlin was arraigned on the Folcroft warrant and released on an unsecured bond the next day. *Id.* ¶ 13.

A preliminary hearing was held on May 9, 2023. *Id.* After the preliminary hearing, the magistrate judge dismissed the case stating that the dispute appeared to be more of a civil matter. *Id.* ¶ 14. At the direction of the District Attorney's Office, Goodlin was re-arrested. *Id.* ¶ 15. At the second preliminary hearing, Goodlin testified that the home improvement contract was for $15,000, and he spent the $5,000 he received on demolition and materials that he claimed were delivered to the residence.[1] *Id.* ¶ 17. The magistrate again dismissed the case. *Id.* ¶ 16. Detective White did not testify at either hearing. *Id.* ¶ 18.

On June 16, 2023, Goodlin brought this suit against Alex Rose, a Delaware County Daily Times journalist who had reported on the case, Jones and Subah, Detective White in his official and individual capacities, and Folcroft. With leave of Court, Goodlin filed an amended complaint on May 29, 2024. Eventually, Defendants Delaware County Daily Times and Alex Rose were dismissed from the case with prejudice. In addition, the parties stipulated to the dismissal of all claims against Jones and Subah. The parties further stipulated to the dismissal of Goodlin's claims for economic and earnings capacity damages. Detective White and Folcroft are the only remaining defendants.

---

[1]  There is no evidence in the record that Goodlin purchased materials for the project or left any materials at the residence.

3

Goodlin's § 1983 claims are as follows: (1) malicious prosecution against Detective White, (2) false imprisonment against Detective White and Folcroft, (3) conspiracy for malicious prosecution and false imprisonment against Detective White and Folcroft, and (4) failure to train and supervise against Folcroft.  Goodlin also presents state law claims for intentional and negligent infliction of emotional distress against both Detective White and Folcroft.[2]

Detective White and Folcroft have moved for summary judgment, arguing there is no evidence to support Goodlin's claims, and he cannot establish a genuine issue for trial. Additionally, they suggest Detective White is entitled to qualified immunity.  The Court held oral argument on June 5, 2025.  Goodlin has responded to the motion for summary judgment mainly by repeating allegations from his amended complaint and relying on sweeping conclusions, unsupported by any record evidence.

## II.     LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law[.]" *Id*.  The movant bears the initial responsibility of informing the Court of the basis for its motion and identifying

---

[2]  The amended complaint suggests that the Folcroft Police Department is separately liable. ECF No. 45 ¶¶ 16, 20, 24, 26-27.  However, the Police Department is not a proper defendant in this case.  To start, the Police Department does not appear as a defendant on the docket. Moreover, a police department is not a proper defendant in an action under 42 U.S.C. § 1983, because it is a sub-division of its municipality. *Johnson v. City of Erie, Pa*., 834 F. Supp. 873, 878-79 (W.D. Pa. 1993) (finding "police department an improper and unnecessary party" in Section 1983 action).  A police department is merely the "vehicle through which the municipality fulfills its policing functions." *Phillips v. Weinman*, No. 25-0171, 2025 WL 1436012, at *2 (E.D. Pa. May 19, 2025).

the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Then, the nonmovant must "set forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.  In ruling on a summary judgment motion, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009) (citation and quotation marks omitted).  The court does not make credibility determinations or weigh the evidence.  *See Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016).

Where a defendant moves for summary judgment based on a lack of proof of a material fact, the court must ask "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Bare assertions, conclusory allegations, or suspicions are insufficient to defeat summary judgment.  *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).  The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).  It is not enough to simply restate the allegations in the complaint; rather, the non-moving party must "point to concrete evidence in the record that supports each and every essential element of his case." *Jones v. Beard*, 145 F. App'x 743, 745–46 (3d Cir. 2005) (citing *Celotex*, 477 U.S. at 322).

III.    **DISCUSSION**

    A.    **Section 1983 Claims**

Section 1983 "does not create substantive rights, but provides a remedy for the violation of rights created by federal law." *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citation omitted). To establish a prima facie case under Section 1983, a plaintiff must demonstrate that a person acting under color of state or territorial law deprived him of a federal right. *Id.* (citation omitted).

    1.    **Malicious Prosecution**

To succeed on his malicious prosecution claim, Goodlin must show: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Waters v. Cheltenham Twp.*, 700 F. App'x 149, 152 (3d Cir. 2017). The failure to satisfy any of the elements is fatal to the claim. *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009). Goodlin has not identified record evidence to support a number of these essential elements.

As an initial matter, Goodlin has not identified evidence that Detective White initiated a criminal proceeding. A prosecutor, not a police officer, typically initiates criminal proceedings. *See Romero v. Tobyhanna Twp.*, No. 19-1038, 2021 WL 4149189, at *9 (M.D. Pa. Sept. 13, 2021). An officer may be considered to have initiated a criminal proceeding if the officer "knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." *Merrero v. Micewski*, No. 96–8534, 1998 WL 414724, at *6–7 (E.D. Pa. July 22, 1998). However, the amended complaint does not allege that Detective

White knowingly provided false information to the prosecutor, and Goodlin has not identified any allegedly false information in the affidavit. At oral argument, counsel for Goodlin argued that Detective White's affidavit was knowingly false because it did not reflect that the total home improvement contract was for $15,000 and that, in addition to performing demolition, Goodlin bought certain materials for the project and delivered them to the residence. As a result, Goodlin supposedly wanted even more up-front money to continue the project, and the residents allegedly refused. Goodlin argues that the omission of this information somehow rendered the affidavit false. However, there is no evidence in the record that Goodlin purchased any such materials, much less that he delivered them to the residence. Thus, there was no basis to include any such information in the affidavit. It is worth noting that Detective White made multiple attempts to speak with Goodlin during the investigation, but Goodlin never responded. Detective White based his affidavit on the information he was able to obtain during his investigation. The investigation showed that Goodlin made a mess of the home, absconded after the residents paid him $5,000, and failed to respond to their attempts to contact him. Goodlin has failed to identify any falsehoods in Detective White's affidavit and therefore Goodlin has failed to show that Detective White initiated the criminal proceeding against him.

In addition, while it is true that the criminal proceeding ended in Goodlin's favor, *see*, *e.g.*, *Harvard v. Cesnalis*, 973 F.3d 190, 203 (3d Cir. 2020), Goodlin has not identified any evidence that Defendants acted maliciously or for a purpose other than bringing Goodlin to justice. There is no dispute that Goodlin received two payments totaling $5,000. There is no dispute that after he received payment, Goodlin never returned to the residence and never completed the work. After the residents complained to the police department, Detective White investigated the complaint, including by, among other things, reviewing documents and

7

photographs, obtaining witness statements, and attempting to contact Goodlin with no success. Once Detective White completed his investigation, he submitted his proposed affidavit and warrant application to a prosecutor who reviewed and approved the charges. Detective White then presented the warrant to a neutral magistrate who signed the warrant. On this record, there is no evidence of malicious intent and therefore no support for Goodlin's malicious prosecution claim. Summary judgment is therefore appropriate.

### 2. False Imprisonment

To succeed on a false imprisonment claim, "a plaintiff must establish: (1) that [he] was detained; and (2) that the detention was unlawful." *Harvard*, 973 F.3d at 202 (alteration in original) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 682-83 (3d Cir. 2012)). A false imprisonment claim under Pennsylvania law has the same elements. *See Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994).

A false imprisonment claim will "necessarily fail if probable cause existed for any one of the crimes charged against the arrestee." *Harvard*, 973 F.3d at 199 (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477 (3d Cir. 2016)). "Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (citation omitted). An officer has probable cause "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995).

Where the plaintiff is arrested pursuant to a warrant, an officer can only be liable for false imprisonment under § 1983 if the officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for

a warrant," and that "such statements or omissions [were] material, or necessary, to the finding of probable cause." *Wilson*, 212 F.3d at 786-87 (internal quotation omitted).

Detective White drafted an affidavit of probable cause that was reviewed and approved by an Assistant District Attorney. A judge then signed the warrant, necessarily finding probable cause for the charges against Goodlin. As is discussed above, Goodlin has presented no evidence that Detective White made false statements or omissions in applying for the warrant. As a result, Goodlin has failed to support his claims of false imprisonment against Detective White.

As to Folcroft, liability under Section 1983 cannot be based solely on a theory of respondeat superior and Goodlin presents no other theory of liability. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."). Accordingly, summary judgment is appropriate on Goodlin's false imprisonment claims.

### 3. Conspiracy – Malicious Prosecution and False Imprisonment

"To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293–94 (3d Cir. 2018) (citation omitted). A § 1983 conspiracy claim "must show an understanding or 'meeting of the minds' with facts demonstrating agreement and concerted action." *Murphy v. Middlesex Cnty.*, 361 F. Supp. 3d 376, 389 (D.N.J. 2019) (citing *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008)).

The amended complaint alleges that Detective White, Folcroft, and the Police Department conspired with the home improvement fraud victims to maliciously prosecute and falsely imprison Goodlin. Goodlin's conspiracy claim is meritless. As an initial matter, there is

no evidence of any constitutional deprivation as both Goodlin's malicious prosecution and false imprisonment claims fail, as discussed above. Moreover, Goodlin has failed to point to any evidence that any defendants reached an understanding to deprive Goodlin of his constitutional rights.

### 4.     Failure to Train and Supervise

To establish liability on a failure to train claim under Section 1983, a plaintiff "must identify a failure to provide specific training that has a causal nexus with [his] injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997).

In support of this claim, Goodlin notes that Detective White investigated about a dozen contractor fraud causes and suggests -- without citing any portion of the record -- that there "may have been a pattern of treating civil contract disputes as criminal matters" and Folcroft "may have failed to properly train officers on distinguishing civil contract disputes from criminal fraud." ECF No. 63 at 4-5. Simply concluding that there "may" have been a pattern or failure to train is insufficient to establish a genuine issue or dispute of material fact for trial. There is no evidence to support Goodlin's failure to train and supervise claim, and no reasonable jury could find in his favor.

### B.     Detective White's Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). An officer is protected by qualified

immunity unless there is a violation of a constitutional right that was clearly established when the officer allegedly violated it. *Jefferson v. Lias*, 21 F.4th 74, 80 (3d Cir. 2021).

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). To define a clearly established right, a "case directly on point" is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 577 U.S at 12 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Accordingly, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id*. at 12 (citation omitted).

"[A] police officer who relies in good faith on a prosecutor's legal opinion that [an] arrest is warranted under the law is presumptively entitled to qualified immunity from Fourth Amendment claims premised on a lack of probable cause." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 255-56 (3d Cir. 2010). Moreover, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). However, suit is allowed if, for example, the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[.]" *Id*. (citations omitted).

As explained above, Goodlin has presented no evidence that Detective White violated any of Goodlin's constitutional rights. Detective White drafted an affidavit of probable cause that was reviewed and approved by a prosecutor. In addition, a neutral judge then signed the warrant, necessarily finding probable cause for the charges against Goodlin. Goodlin has presented no evidence that the affidavit was false or that Detective White acted in an

11

unreasonable or otherwise illegal manner. Under these circumstances, Detective White is entitled to qualified immunity.

### C.     Punitive Damages are Precluded

Punitive damages are "an 'extreme remedy' available in only the most exceptional matters." *Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005) (citations omitted). In a Section 1983 case, a plaintiff may recover punitive damages "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). As is discussed above, Goodlin has presented no evidence that Defendants were motivated by evil motive or were callously indifferent to Goodlin's federally protected rights. Therefore, there is no basis for punitive damages. In addition, a plaintiff may not seek punitive damages against a municipality, such as Folcroft. *See Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983.").

### D.     State Law Claims

Goodlin included in his Complaint state law claims for intentional and negligent infliction of emotional distress against Folcroft and Detective White. Although the Court is granting summary judgment on the federal claims over which it has original jurisdiction, the Court has discretion to retain supplemental jurisdiction over Goodlin's remaining state law claims. *See* 28 U.S.C. § 1376(c)(3). Judicial economy, convenience, and fairness weigh in favor of retaining jurisdiction. The state and federal claims involve the same facts, discovery in this case is complete, and the parties have fully briefed the state law claims. Moreover, this case was filed more than two years ago and leaving the state law claims unresolved at this stage would be

unfair to the parties. Accordingly, the Court will retain jurisdiction for purposes of resolving Defendants' motion for summary judgment.

### 1. Intentional Infliction of Emotional Distress

Under Pennsylvania law, to establish a claim for intentional infliction of emotional distress a plaintiff must show: (1) that he was subjected to extreme and outrageous conduct; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress was severe. *Robinson v. May Dep't Stores Co.*, 246 F. Supp. 2d 440, 444 (E.D. Pa. Feb. 12, 2003).

"[E]xistence of the alleged emotional distress must be supported by competent medical evidence." *Kazatsky v. King David Mem. Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987). As an initial matter, Goodlin's claim fails because he has not presented any medical evidence in support of his claim as required.

In addition, Goodlin's claim is barred by the immunity provisions of Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), 42 PA. CONS. STAT. § 8541, *et seq* ("PSTCA"). "Under that statute, local agencies, such as townships, and their employees acting in their official capacities are generally immune from tort liability unless the alleged misconduct fits into one of a few narrow categories enumerated in the statute." *Walker v. North Wales Borough*, 395 F. Supp. 2d 219 (E.D. Pa. 2005). None of those exceptions to immunity applies to intentional torts, such as intentional infliction of emotional distress. *Agresta v. City of Philadelphia*, 694 F. Supp. 117, 123 (E.D. Pa. 1988). Accordingly, Goodlin's intentional tort claims against Folcroft and Detective White in his official capacity fail as a matter of law.

Goodlin's intentional infliction of emotional distress claim against Detective White in his personal capacity also fails. Individual public employees sued in their personal capacities do not

enjoy immunity under the PSTCA for acts that rise to the level of "a crime, actual fraud, actual malice or willful misconduct." 42 PA. CONS. STAT. § 8550. A police officer engages in willful misconduct if he commits an intentional tort subjectively knowing that his or her conduct is wrong. *Walker*, 395 F. Supp. 2d at 231 (citation omitted). Goodlin has presented no evidence that Detective White engaged in willful misconduct, much less that he committed a crime or engaged in actual fraud. Consequently, Defendants are entitled to summary judgment on Goodlin's intentional infliction of emotional distress claim.

### 2. Negligent Infliction of Emotional Distress

The PSTCA's willful misconduct exception does not apply to acts of negligence. *See Heckensweiler v. McLaughlin*, 517 F. Supp. 2d 707, 720-21 (E.D. Pa. 2007). Instead, the PSTCA specifies that local agencies and their employees are liable only for negligent acts that fall into one of the following categories: (1) vehicle liability; (2) care, custody, or control of personal property; (3) care, custody, or control of real property; (4) dangerous conditions of trees, traffic controls, or street lights; (5) dangerous conditions of utility services facilities; (6) dangerous conditions of streets; (7) dangerous conditions of sidewalks; (8) care, custody, or control of animals, and (9) sexual abuse. 42 PA. CONS. STAT. § 8542.

Goodlin's negligent infliction of emotional distress claim does not fall within any of the nine specified categories. Accordingly, Folcroft and Detective White are immune from liability. The Court will therefore grant summary judgment on Goodlin's negligent infliction of emotional distress claim.

### E. Leave to File Second Amended Complaint

In a last-ditch effort to avoid dismissal, Goodlin seeks leave to amend the complaint. A Court should freely grant leave to amend "when justice so requires." FED. R. CIV. P. 15(a)(2). "[W]here plaintiff files a motion to amend after defendant has moved for summary judgment the motion to amend will not be granted unless the party seeking amendment can show not only that the proposed amendment has 'substantial merit,' but also come forward with 'substantial and convincing evidence' supporting the newly asserted claim." *Carey v. Beans*, 500 F. Supp. 580, 582 (E.D. Pa. 1980) *aff'd*, 659 F.2d 1065 (3d Cir. 1981) (internal citation omitted).

Goodlin has not established that any proposed amendment has substantial merit, nor has he come forward with substantial and convincing evidence to support any such amendment. On the contrary, during oral argument, counsel conceded that he did not have any new facts to add to the complaint. Giving Goodlin another opportunity to amend the complaint under the circumstances presented here would prejudice defendants.

## IV. CONCLUSION

Goodlin has failed to substantiate the allegations in his amended complaint, and he has not pointed to record evidence to allow a jury to rationally find in his favor. Accordingly, there is no genuine dispute as to any material fact, and Detective White and Folcroft are entitled to judgment as a matter of law. The Court will therefore grant Defendants' motion for summary judgment. An appropriate order follows.

                                                  **BY THE COURT:**

                                                  _____
                                                  MARY KAY COSTELLO, J.